Gawtry v. Leland.

WILLIAM M. GAWTRY and others

v.

WARREN LELAND SR. and others.

1. Lands bordering on the ocean by a bluff, were conveyed expressly subject to a covenant that the grantee, his heirs &c., would not at any time thereafter build or suffer to be built, erected or moved, any building or structure on any part of the lot eastward of a designated line, and that they would not suffer to be done any act, matter or thing which might at any time thereafter in anywise obstruct or interfere with the view or prospect from the adjoining hotel of the grantor across that part of the lot, but that the grantee, his heirs or assigns, might, nevertheless, erect any bough-house on the margin of the ocean bank of the lot, or any bath-house at the foot of the bank.—*Held*, that the construction of a pavilion along the entire ocean-front of the lot (even though of no greater height than a bough-house) is a violation of the covenant, both from its extent and its obstruction of the view. The fact that a portion of such pavilion extends below high-water mark, upon lands belonging to the state, is no justification for its erection in violation of the covenant.

2. The owner of land the surface water from which usually flows over his neighbor's lands, has no right to permit it, after being mixed with noxious matter on his land, to flow on the lands of his neighbor.

Bill for injunction. On motion to dissolve, on bill and answer and affidavits.

*Mr. John E. Lanning,* for the motion.

*Mr. R. Allen Jr., contra.*

THE CHANCELLOR.

The complainants, who are the owners of the Mansion House hotel premises at Long Branch, and keep the hotel, bring suit against the Messrs. Leland, defendants, who own what is known as the Ocean Hotel property, and keep that hotel, to restrain them from violating a covenant against

building upon a part of the land of the latter; and, also, to restrain them from building on the land of the complainants, and against continuing a nuisance of foul water flowing from their land upon that of the complainants, to and under their stables (in which are kept a large number of horses), to their great annoyance and injury.

The premises upon which is being erected on the land of the defendants that part of the building complained of, are the southern part of the Ocean Hotel property, and are about one hundred and forty feet in front on the ocean. They are the extreme easterly part of a lot of about three acres and a half, which was sold and conveyed by Samuel Laird to Woolman Stokes, in March, 1859, under which conveyance the defendants derive their title to the lot. The complainants hold their title to the Mansion House property also under Laird, but through conveyances subsequent to that made to Stokes. When the conveyance to Stokes was made, the Mansion House property was owned by Laird, and occupied by him for the uses of a summer hotel, to which it is still devoted. The conveyance to Stokes was expressly subject to the terms and conditions of an agreement made by and between Stokes and Laird, dated January 26th, 1859, and recorded in the Monmouth county clerk's office, in respect to the sale and conveyance of the lot of three acres and a half by the latter to the former. By that agreement, Laird covenanted to convey the property to Stokes, for the consideration therein mentioned; and Stokes, on his part, covenanted for himself, his heirs, executors, administrators and assigns, that he and they would not, at any time thereafter, build, or suffer to be built, erected or moved, any buildings or structure, on any part of the lot which lay eastward of a line six chains and twenty links from the rear of the west line of the lot, and that he, his heirs or assigns, would not suffer to be done any act, matter or thing which might, at any time thereafter, in anywise obstruct or interfere with the view or prospect from the Mansion House, across the eastward part of the lot, and

that Laird, his heirs or assigns, might forthwith abate any such obstruction or erection from the eastward part of the lot, without any molestation from Stokes or his representatives; but it was provided that nothing therein contained should be construed to prevent Stokes, his heirs or assigns, from erecting any bough-house on the margin of the ocean bank of the lot, or bath-house at the foot of the bank.

By the agreement, Laird and Stokes bound themselves, their heirs, executors, administrators or assigns, each to the other, in the sum of $500 liquidated damages, to be paid by the party violating the agreement to the other party; but it was thereby declared to be further agreed, that the payment of the liquidated damages should not be construed to allow either of the parties to violate, or to continue to violate, any of the agreements.

The complainants allege, and it appears, that the Lelands, in violation of the covenant not to build or obstruct the view, are constructing a building along the entire ocean-front of the Stokes lot, and extending beyond the line, upon the complainants' land adjoining. They allege, and it appears, also, that the defendants have no right to build upon the land of the complainants. It is insisted by the complainants, that the building on the defendants' land will materially interfere with and obstruct the view of the ocean from the Mansion House, to the serious damage of the complainants, and materially diminish the value of their property.

The defendants admit that a small part of the building is (but, they allege, merely by mistake) being constructed upon the land of the complainants, without right or authority to put it there. As to the rest of the building, they insist that it is within the exception in the covenant; that it is only an improved bough-house; and, also, that it will not materially obstruct the view. They allege that it is built, in part, upon land the title to which has been derived from the state of New Jersey, being below ordinary high-water mark, and that the complainants have acquiesced in the construction of the

Gawtry v. Leland.

building, with full knowledge of its character and proposed extent, for so long a period as to debar them from any right to the enforcement of the covenant in equity.

The existence of the covenant, and the reference to it in the deed, are admitted. The defendants claim to have acted in actual ignorance of either, but they are, of course, under the circumstances, chargeable with knowledge of both. The building is what is known as a pavilion, extends along the whole front of the Stokes lot, and is intended to be permanent. The covenant provides against the erection of any building or structure on that part of the lot, except a single bough-house, which is understood to be a rustic summer-house of but small dimensions, constructed in part of the boughs of trees, and intended merely to furnish a seat for a few persons, in the shade, on the bank of the ocean. If it were to be held that, in character, the pavilion is substantially the same as a bough-house, yet, by its extent, it would be a violation of the covenant. It is obvious that it was the intention of the parties to stipulate that the ocean-front of the lot should be kept free from everything which could, in any way, to any considerable extent, obstruct the view of the ocean over it from the Mansion House. It was manifestly not within their intention to authorize the construction of a building which, though not higher than a bough-house, or in its construction more obstructive of the view than such a house of the same extent would be, would extend along the entire front of the lot. It is not to be forgotten that the covenant expressly provides against any building or structure except a bough-house. A reasonable construction will be given to the covenant; one in accordance with the intention of the parties.

In *Kirkpatrick* v. *Peshine, 9 C. E. Gr. 206,* it was held that the erection of a bay-window, extending beyond a certain line, was a violation of an agreement that the building should not extend beyond that line, and that equity would restrain such violation.

Gawtry *v.* Leland.

In *Child* v. *Douglas, Kay 560,* it was held that the build-
ing of a wall or fence of fifteen feet high, across a strip upon
which the defendant was bound, by covenant, not to erect a
building, would be a violation of the covenant.

The building in question is manifestly a violation of the
covenant.

As to the claim that a portion of the building is on land
below the high-water line of the ocean, it appears that but a
very small and inconsiderable portion (a corner) is over the
line.    Covenants controlling the enjoyment of land, even
though not binding at law, will be enforced in equity, pro-
vided the person into whose hands the land passes, has
taken it with notice of them.    As before stated, notice of
the covenant in this case must be imputed to the defendants.

They, therefore, should be restrained, unless the defence
of acquiescence set up in their answer is to prevail.    That
defence, however, is met and overthrown upon this motion
by the explicit, positive, thorough and unequivocal denial
of the complainants as to their knowledge of the plan and
construction of the work prior to the time of giving notice
to the defendants that they must not proceed with the
building, because it was in violation of the covenant.

It remains to consider the other feature of the case—the
alleged nuisance of foul water which the defendants per-
mit to run from their premises upon those of the complain-
ants.    The flowing of the water is not denied, nor is it
denied that it is combined with foul liquids and substances
from the cesspools and gas-works of the defendants upon
their premises; but it is insisted that the water is only sur-
face water which collects upon the defendants' premises in
considerable quantities, in one corner thereof, because of
the fact that the complainants have raised the grade of an
adjoining road belonging to them, and filled a ditch along-
side thereof, through which the water from the defendants'
premises previously was discharged; and it is said that
this water so collected is made to overflow and run upon the
complainants' land by the increase of the surface water in

times of rain. The evidence shows that the water is of a very objectionable character, and a nuisance upon the complainants' premises. Although the right of the defendants to permit the surface water to collect and remain on their premises, so long as it does no injury to others, is not disputed, it is clear that it is their duty, if such water becomes offensive from the substances or liquids upon their land, to prevent it from flowing upon the land of the complainants, and the fact that the offensive water is surface water will not discharge the defendants from the duty of so using their premises in respect thereto as not to injure their neighbors.

The motion will be denied, with costs.